OPINION
Edna A. Jones, a named beneficiary of a trust created by the will of her brother, Charles Courtney Jones, appeals from a court order directing that certain sums of money be paid out of the corpus of the trust for the benefit of decedent's wife, Mrs. Patricia M. Jones. The respondent herein, Southern California First National Bank, is the conservator of the estate of Mrs. Jones. *Page 276 
 Facts
The will of Charles Courtney Jones provided for the outright distribution of certain assets to his wife, and for the distribution of the remainder in trust for the benefit of the widow, and others, including appellant. The beneficial interests in the trust were given to the wife for life, then in varying shares to the deceased's sister (appellant), niece, brother-in-law, and sister-in-law. Importantly, the trustee was given power to invade the corpus of the trust, as follows: "If the trustee deems the net income payable hereunder not sufficient to provide for the proper support, maintenance, comfort, happiness, education, and recreation of any beneficiary, (1) whether or not such beneficiary is at the time receiving or entitled to receive income hereunder, and (2) without taking into consideration other income or financial resources of such beneficiary, it may as often as it deems necessary, pay to or apply for the use and benefit of such beneficiary, such additional part, up to and including the whole thereof, of the principal of the trust estate, or if the trust estate has been divided into shares or departments, of the principal of the respective share or department, all as the Trustee deems adequate in its absolute discretion." (Paragraph C(6) of the Decree of Distribution.)
Following the death of Mr. Jones, his widow, suffering from grief and poor health, was made the subject of conservatorship proceedings. When the Jones' estate of over $400,000 was first distributed,[1] Title Insurance and Trust Company ("TI"), named under the will as cotrustee with Mrs. Jones, was appointed as sole trustee. A few months later, TI, who had served as conservator of Mrs. Jones' estate, was relieved of its conservatorship duties, and Southern California First National Bank was named as successor. At the same time, conservatorship proceedings were transferred to San Diego County where the conservatee resided. Upon its resignation as conservator, TI handed its successor, Southern California First National Bank, an accounting of conservatorship expenses. In examining this accounting it was discovered that none of the expenses incurred for the widow's estate were reimbursed from the corpus of the trust pursuant to the provisions authorizing the trustee to invade the trust corpus. Consequently, the bank petitioned the court to order TI, in its capacity as trustee, to so reimburse the conservatorship estate of Mrs. Jones. *Page 277 
In response to the bank's petition the Los Angeles Superior Court issued an order construing the trust and directing the trustee to disburse trust funds to reimburse the conservatorship estate of Mrs. Jones. The court construed the above-cited provision of the trust as requiring, in conformity with the testator's intent, that the trustee pay out of the trust corpus such sum as would be adequate to cover the widow's living expenses, including conservatorship costs, where net income is insufficient to meet such expenses.[2] Accordingly, the court ordered the trustee pay the following sums in reimbursement of the widow's conservatorship estate:
(1) $53,593.67 for the necessary and reasonable maintenance expenses of the widow, expenses incurred by TI in its capacity as conservator of Mrs. Jones' estate from September 1, 1972, to April 15, 1974; (2) $14,000 to TI for ordinary and extraordinary services as conservator of the estate of the widow during the period from September 1, 1972, through April 22, 1974; (3) $3,050 in attorney's fees to the firm serving TI in its capacity as conservator of the estate during the aforementioned period; (4) $4,479.52 in attorney's fees to the firm serving the conservator of the person of the widow from November 16, 1973, through July 31, 1974. The court also ordered the trustee to reimburse the Bank, as conservator of the estate of Mrs. Jones, for futureexpenditures from the conservatorship estate for the proper "support, maintenance, comfort, happiness, education or recreation of the widow" approved by the court.[3] *Page 278 
 Contentions (1) The appellant urges us to overturn the lower court's order as being grounded in an erroneous interpretation of the provision regarding encroachments upon the trust corpus. She asserts that the clear language of the provision confers a discretionary power upon the trustee, and that there is no showing that such discretion has been abused, justifying court intervention either as to past or future conservatorship expenses. Respondent contends, however, that the trustee was given no such discretion. Rather, it is claimed that an absolute gift of support to the widow was intended, mandating invasions of corpus without any showing of need. These conflicting constructions of the trust urged upon us require that a fresh view of decedent's estate plan be taken to ascertain his true intent, before the propriety of the court order can be judged.
Construction of the Trust
The words of the trust expressly grant to the trustee thediscretionary power to invade the trust corpus. (See paragraph C(6) of the decree of distribution, hereinbefore quoted in full on page 276 ante.) Paragraph C(7)(h) of the decree of distribution further provides that "[u]nless specifically limited, all discretions conferred upon the Trustee shall beabsolute, and its exercise conclusive on all persons interested in the trusts." (Italics added.) The grantor was aware that his wife would have ample assets of her own by virtue of her succession to half of the substantial community assets and by virtue of her outright gift under the will. Importantly, the trustee was given tight control over the necessity, time, and amount, of payments which could be made from the trust capital.[4]
With the above stated factors in mind, an analysis of paragraph C(6) (quoted on p. 276, ante) compels us to arrive at a conclusion different *Page 279 
from that of the trial judge. (Our determination of the proper construction of the trust as it relates to the discretion of the trustee makes it unnecessary to respond to other contentions raised on appeal.)
Paragraph C(6), for our limited purpose, may be stated to provide: "If the trustee deems the net income payable hereunder not sufficient to provide for the proper support [etc.] of any beneficiary . . . and (2) without taking into consideration other income or financial resources of such beneficiary, other income or financial resources of such beneficiary, it may . . . pay . . . such additional part, up to and including the whole thereof, of the principal of the trust estate . . . all as the Trustee deems adequate in its absolute discretion." As we read this provision, the trustee, in his discretion, may disregard consideration of a beneficiary's other assets, but is not required to disregard them in determining whether the net income is adequate to provide proper support, etc. The additional proviso in paragraph C(6) not quoted above, "(1) whether or not such beneficiary is at the time receiving or entitled to receive income hereunder," lends reinforcement to our conclusion. The only fair reading of the total provision of paragraph C(6) gives the trustee absolute discretion to invade the corpus for beneficiaries other than the one receiving the income. It is a granting of total reliance upon the judgment of the trustee and absolves the trustee of any liability upon the exercise of its discretion. The sole limitation is a total abuse of discretion, and in the instant case, where substantial assets and income are shown from a separate estate and there is evidence of the widow's income from other sources, we find no abuse of discretion. There is no showing that the trustee did not merely conclude that the income available to the widow from the trust was adequate and, if it was not, that there were other resources available to her so as to provide the support, etc., desired by the testator.
The judgment (order construing the trust and instructing the trustee to disburse funds) is reversed.
Kaus, P.J., and Hastings, J., concurred.
[1] The widow received $256,789.23 in assets, while $236,838.95 was transferred into trust.
[2] The relevant portion of the court's finding provided as follows: "3. In executing his will and directing that a testamentary trust be established thereunder decedent intended his widow to be the primary beneficiary thereunder; he intended that she be given during her lifetime the entire net income of the trust; he intended that if such net income be insufficient a) adequately to cover her living expenses, including compensationpaid to the conservators of her person and estate and to therespective counsel thereof, b) to cover her federal and state income taxes, and c) adequately to cover all other proper expenses incurred for her support, maintenance, comfort, happiness, education and recreation, the corpus of said trust, up to the whole thereof, be disbursed by the trustee to cover such insufficiency; he intended that this invasion of trust corpus for the benefit of the widow be without regard to her other income and financial resources; he intended that all tax planning considerations in establishing the trust and in providing for distribution of community property and other assets to his widow be secondary and junior to decedent's primary consideration that his widow be fully and liberally provided for by the trust; decedent intended his widow to be a co-trustee of the trust; and he intended that any exercise of discretion by TI as trustee be not contrary to decedent's intentions and purposes as referred to above in paragraph 3." (Italics added.)
[3] This portion of the order reads as follows: "4. TI as trustee of the trust herein is authorized and directed to pay petitioner from time to time from assets of the trust in reimbursement of the conservatorship estate such sums as are from time to time determined by the court in the conservatorship proceedings either by way of approval of an accounting or by way of separate petition filed in such proceedings to have been paid by petitioner from the conservatorship estate for the proper support, maintenance, comfort, happiness, education or recreation of the widow, and all such payments by TI to petitioner on such determinations shall be conclusively deemed to have been made by TI in the proper discharge of its duties as trustee herein and TI shall receive full credit therefor in its accountings as trustee herein." (Italics added.)
[4] Respondent included with its petition to the lower court a declaration of the widow which alleged that decedent had told her upon execution of his will that "all [her] expenses would be paid for from the trust. . . ." Even if we do take cognizance of such an oral declaration (which is questionable under the provisions of Prob. Code § 105), it does little to aid our interpretation of the character of the expenses which the decedent intended to be reimbursable from the trust corpus. *Page 280